

**SO ORDERED.**

**SIGNED this 20 day of January, 2010.**

```
                              _____
                                   JAMES D. WALKER, JR.
                              UNITED STATES BANKRUPTCY JUDGE
```
_____


UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 09-51938-JDW |
| TARA LATOUCHE STRANGE, | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

| | |
|---|---|
| For Debtor: | Jason Orenstein<br>Post Office Box 4086<br>Macon, Georgia 31208 |
| For Fidelity Bank: | Ronald A. Levine<br>2270 Resurgens Plaza<br>945 E. Paces Ferry Road<br>Atlanta, Georgia 30326 |
| | Daniel Wilder<br>544 Mulberry Street, Suite 800<br>Macon, Georgia 31201-2776 |
| For CitiFinancial<br>Auto Credit: | Lisa Ritchie Craig<br>Christopher Reading<br>171 17th Street, NW, Suite 975<br>Atlanta, Georgia 30363 |
| For Chapter 13<br>Trustee: | Camille Hope<br>Post Office Box 954<br>Macon, Georgia 31202 |

**MEMORANDUM OPINION**

This matter comes before the Court on objections to confirmation by Fidelity Bank and CitiFinancial Auto Credit, Inc.  This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L).  After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

Debtor Tara Strange filed a Chapter 13 petition on June 23, 2009.  Her plan proposed to pay secured creditors CitiFinancial Auto Credit, Inc. and Fidelity Bank the value of their collateral, with no dividend for unsecured claims.  CitiFinancial is secured by a 2007 Chevrolet Suburban, which Debtor valued at $25,000.[1]  She owes approximately $44,000 on the note for the Suburban.  Fidelity Bank is secured by a 2007 Kia Optima, which Debtor valued at $10,000.  She owes approximately $23,000 on the note for the Kia.

Debtor is married with five minor children, ranging in age from 5 to 17.  Her husband, Stacy Strange, has not filed for bankruptcy.  Debtor's bankruptcy case was precipitated by the incarceration of Mr. Strange for a parole violation and the resulting loss of his income.

Debtor and Mr. Strange both are registered nurses.  Debtor works at a hospital in Griffin, Georgia, near the family home.  Mr. Strange works for a hospice in Marietta, Georgia, which is approximately 60 miles from the home.  Mr. Strange has worked for the hospice for eight years and will return to work there after completing all his obligations related to his parole violation.

---

[1] There is some dispute as to the value of the Suburban.  That dispute is not relevant because even the most generous valuation is substantially less than the amount of the debt.

Debtor testified that at the time she purchased the Suburban in July 2007, it was intended for her use. After the purchase, she drove it daily to work. Furthermore, it is the only vehicle that can accommodate all five children, so she also drives it when necessary to transport the entire family.

Debtor and Mr. Strange both testified that they purchased the Kia in May 2008 to replace a prior car that was no longer reliable. They specifically wanted a fuel-efficient car because they intended Mr. Strange to drive it to and from work in Marietta. Mr. Strange testified that he had driven the Suburban to work a couple of times, but the fuel costs made it impractical for him to use for commuting. Debtor and Mr. Strange purchased the Kia together because, of the two, Mr. Strange had the higher income and Debtor had the better credit rating. After purchasing the Kia, Mr. Strange did use it to commute. In addition, Debtor used it on Mr. Strange's days off and while he was incarcerated to take advantage of its fuel economy.

CitiFinancial and Fidelity Bank filed objections to confirmation of Debtor's plan on the ground that the Bankruptcy Code prohibits bifurcation and cramdown of their claims. The Court held a hearing on the objections on December 8, 2009. At the conclusion of the hearing, the Court invited the parties to file briefs. Having considered the evidence and the law, the Court finds Fidelity Bank's claim as to the Kia is not subject to the hanging paragraph and, consequently, may be crammed down. However, CitiFinancial's claim as to the Suburban falls within the scope of the hanging paragraph and cannot be crammed down. Therefore, the Court will sustain CitiFinancial's objection to confirmation and overrule Fidelity Bank's objection. The Court will further order Debtor to modify her plan in accordance with this ruling.

**Conclusions of Law**

At issue in this case is whether or not Debtor can cram down the debts on the Suburban and the Kia–by bifurcating them into secured and unsecured claims–over the objection of the respective creditors. Section 1325(a)(5)(B) of the Bankruptcy Code provides for cramdown so long as the secured creditor retains its lien and receives the present value of its secured claim. However, the applicability of cramdown is limited by the hanging paragraph,[2] which provides in relevant part that the debtor may not cram down a claim

> if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle ... acquired for the personal use of the debtor[.]

11 U.S.C. § 1325(a)(*). Thus, the hanging paragraph applies if four elements are satisfied with regard to (1) type of security interest (purchase money); (2) type of collateral (motor vehicle); (3) time of acquisition (within 910 days before the petition date); and (4) purpose of acquisition (personal use of the debtor). Neither Debtor nor the creditors have disputed the first three elements. Therefore, the only issue in this case is whether or not the Kia and Suburban were acquired for the personal use of Debtor.

Framework for Interpreting the Hanging Paragraph

Since its enactment in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), the hanging paragraph has been the subject of numerous judicial opinions, including three cases decided by the Eleventh Circuit Court of Appeals. The circuit

---

[2] The hanging paragraph is so called because it was inserted by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 as a separate, unenumerated paragraph following § 1325(a)(9). It is commonly cited as § 1325(a)(*).

court has described the language of the hanging paragraph as "plain and unambiguous," while also finding that applying the language as written may lead to an absurd result. DaimlerChrysler Fin. Servs. Ams. LLC v. Barrett (In re Barrett), 543 F.3d 1239, 1246 n.7 (11th Cir. 2008). As the circuit court also has acknowledged, the hanging paragraph is notorious for "its poor drafting." Graupner v. Nuvell Credit Corp. (In re Graupner), 537 F.3d 1295, 1297 (11th Cir. 2008).

None of the cases decided by the court of appeals addressed the issue raised in this case.[3] However, in each of its decisions, the circuit court was guided by its conclusions about congressional intent. The court has stated that the "legislative history leaves little doubt" about Congress' intent, Graupner, 537 F.3d at 1297-98; Barrett, 543 F.3d at 1246, and that "[i]t seems to be undisputed that Congress viewed th[e] use of 'cramdown' as abusive and unfair to car lenders and other lienholders, so it sought to protect '910-claims' by adding the hanging paragraph ...," Nuvell Fin. Servs. Corp. v. Dean (In re Dean), 537 F.3d 1315, 1318.[4] In other words, the hanging paragraph is intended to benefit certain secured creditors. Based on this determination of congressional intent, the circuit court has rejected interpretations of the hanging

---

[3] In Barrett, the court held that when a debtor surrenders a 910 vehicle, the creditor may pursue a deficiency claim if allowed by state law. 543 F.3d at 1247. In Graupner, the court held that in the context of a 910 vehicle, a purchase money security interest covers any negative equity financed by the lender. 537 F.3d at 1303. In Nuvell Fin. Servs. Corp. v. Dean (In re Dean), the court held that a creditor with a 910 claim is entitled to interest on the full amount of the claim. 537 F.3d 1315, 1320 (11th Cir. 2008).

[4] It is unclear which specific legislative history the circuit court relies on for its conclusions as to congressional intent. However, the court makes a passing reference to the headings to Section 306 of BAPCPA, which provided for the amendment of § 1325. See Barrett, 543 F.3d at 1246. The overall heading of Section 306 is "Giving Secured Creditors Fair Treatment in Chapter 13." Subsection 306(b), which adds the hanging paragraph to the Bankruptcy Code, is titled "Restoring the Foundation for Secured Credit." Pub. L. No. 109-8, sec. 306.

6

paragraph that leaves 910 creditors no better off than they were under pre-BAPCPA law.  See Barrett, 543 F.3d at 1246 n.7.

The circuit court also has rejected attempts to limit the reach of the hanging paragraph.  For example, in Graupner, the circuit court suggested that an overly narrow reading of the hanging paragraph that serves to exclude a significant number of common transactions in the realm of car sales (loans that include financing of negative equity) would necessarily lead to an absurd result.

> If Congress did not intend for the hanging paragraph to apply to a trade-in's negative equity, as the Debtor ultimately contends, it would have the effect of excluding a substantial number of lawful auto finance transactions that were industry practice when BAPCPA was enacted (a practice that Congress is presumed to have known about).  This would be an absurd result given that it is recognized that the "architects [of the hanging paragraph] intended only good things for car lenders and other lienholders."

Graupner, 537 F.3d at 1303 (quoting In re Long, 519 F.3d 288, 294 (6th Cir. 2008)).  See also Barrett, 543 F.3d at 1246 ("[C]ar lenders and lienholders should clearly not be negatively impacted by the hanging paragraph in situations where the debtor surrenders a 910 vehicle, yet that is exactly the effect if surrendering the vehicle is deemed to fully satisfy the debt when the contract provides for recourse.  Congress obviously did not intend such a result in legislation purporting to 'Restor[e] the Foundation for Secured Credit.'").

Personal Use of the Debtor

With the understanding that the Eleventh Circuit cases indicate the hanging paragraph should be construed in favor of the 910 creditor, the Court turns to interpreting the phrase "personal use of the debtor."  As a preliminary matter, it is well-established that the relevant time

7

period for analyzing the personal use question is the time of acquisition of the vehicle at issue.  In re Lorenz, 368 B.R. 476, 485 (Bankr. E.D. Va. 2007).

The Court previously parsed the phrase "personal use of the debtor" in In re Jackson, 338 B.R. 923 (Bankr. M.D. Ga. 2006) (Walker, J.).  In Jackson, the debtor purchased a car for the primary use of his non-filing spouse.  The lender argued its claim fell within the scope of the hanging paragraph.  Id. at 925.  The Court reasoned that personal use of the debtor is distinct from family or household use, noting that "when Congress wants to include family or household use within the scope of a statue, it knows how to do so."  Id. at 925-26 (citing 11 U.S.C. §§ 101(8), 365(d)(5), 506(a)(2), 507(a)(7), 522).  The Court concluded that because the car at issue was not purchased for the debtor's personal use, but rather primarily for his wife's use, then it was not a 910 car.  Id. at 926.

Since Jackson was decided, a growing body of case law has emerged on the personal use issue.  Such cases generally can be divided into two categories: (1) those in which the debtor argues the vehicle was purchased for business rather than personal use;[5] and (2) those in which the debtor argues the vehicle was purchased for the use of someone other than the debtor.[6]  Thus, the personal use element of the hanging paragraph can be divided into two sub-elements: why and who.  In re Finnegan, 358 B.R. 644, 648 (Bankr. M.D. Pa. 2006); see also In re Ford, No. 07-28188, 2008 WL 1925153, at *3 (Bankr. E.D. Wis. Apr. 29, 2008) ("the proper construction of the hanging paragraph must afford some meaning to the words 'of the debtor' after the term

---

[5] See In re Heglar, No. 09-51077, 2009 WL 2843302, at *2 (Bankr. M.D.N.C. Aug. 31, 2009) (collecting cases).

[6] See In re Bethoney, 384 B.R. 24, 29 n.18 (Bankr. D. Mass. 2008) (collecting cases).

'personal use'").

*Personal Use:* The Bankruptcy Code does not define "personal use." Consequently, courts have looked to other sources to give some meaning to the phrase. In doing so, they have often sought guidance in the reasoning of Cypher Chiropractic Center v. Runski (In re Runski), 102 F.3d 744 (4th Cir. 1996), which addresses similar language in a different context. In Runski, the court considered whether the debtor could redeem certain medical equipment pursuant to § 722, which provides for redemption of "personal property intended primarily for personal, family, or household use[.]" Id. at 745-46 (citing 11 U.S.C. § 722). The debtor argued that although the equipment was used in her business, it should be deemed personal use property because it was titled in her name and was used by her. Id. at 747. The court disagreed, holding that "property used for business purposes or with a profit motive is not 'property intended primarily for personal ... use[.]'" Id. The court rejected an interpretation of "personal" based solely on the identity of the person using the property. In other words, the fact that the debtor was the only person to use the property did not render such use "personal use." More relevant to the court was how the property was used. Because the debtor used the equipment to earn money, it was not personal use property. Id.

By analogizing to Runski, most courts have concluded that "personal use" in the context of the hanging paragraph simply means any non-business use. See In re Phillips, 362 B.R. 284, 303-04 (Bankr. E.D. Va. 2007). Moreover, by separating the identity of the use from the how the property is used, the reasoning in Runski is consistent with a two-part approach to the analysis of the "personal use of the debtor" language, such that "personal use" describes the type of use, while "of the debtor" describes the user.

9

***Of the Debtor:*** Next the Court must consider the meaning of "of the debtor." Section 101(13) of the Bankruptcy Code defines "debtor" as the "person ... concerning which a case under this title has been commenced." 11 U.S.C. § 101(13). There is no reason to believe that Congress intended "debtor" to mean something different in the context of the hanging paragraph. Therefore, to be "of the debtor," Debtor must have intended to use the vehicles at the time of their acquisition. However, even with this understanding of the language, the statute cannot be applied without adding some qualifier as to the extent of Debtor's use.

Courts have taken varying approaches to filling the gap. For example, in Jackson, this Court focused on whether the debtor was the primary user, noting that "the vehicle must have been acquired for the use of a particular person–Debtor–for the hanging paragraph to apply." 338 B.R. at 926. Because the car at issue was purchased for the use of the non-filing spouse, because the non-filing spouse was the primary driver of the car, and because the debtor drove a different car as his primary vehicle, the Court concluded the car at issue was not a 910 car. Id.

Other courts have adopted the "significant and material use" test set forth in In re Solis. 356 B.R. 398 (Bankr. S.D. Texas 2006). First, the court stated that a car used exclusively by a non-debtor generally cannot be a 910 car. Id. at 409. However, the court also expressed its willingness to treat a non-debtor spouse's use as use by the debtor if the circumstances warrant such a conclusion. Id. As to the amount of use by the debtor, the court found "no authority in the statute to determine that a vehicle is not a 910 Vehicle because the purchaser intended someone [other than the debtor] to use part of the time." Id. The court, therefore, adopted what it described as "its best estimate of a reasonable conclusion," and set forth the requirement that the "acquirer intended a debtor's use to be significant and material." Id. Jackson, Solis, and

other cases that attempt to measure or quantify the debtor's use of a vehicle do so by reference to the totality of the circumstances.  See In re Matthews, 378 B.R. 481, 490 (Bankr. D.S.C. 2007); In re Smith, No. 07-30201, 2007 WL 1577668, at *4 (Bankr. S.D. Texas May 29, 2007).

Even though they often apply slightly different tests, courts have reached consistent results when deciding whether the personal use is "of the debtor."  As a general rule, when someone other than the debtor is the exclusive user of a vehicle, the vehicle does not fall within the scope of the hanging paragraph.  In addition, courts often find that when a non-filer is the primary user of the vehicle, the hanging paragraph does not apply.  In re Lewis, 347 B.R. 769 (Bankr. D. Kan. 2006) (car purchased by debtor for independent adult daughter who had bad credit was not a 910 car); In re Solis, 356 B.R. 398 (Bankr. S.D. Tex. 2006) (car purchased for the use of independent adult son was not a 910 car); In re Finnegan, 358 B.R. 644 (Bankr. M.D. Pa. 2006) (car purchased for the use of non-filing spouse, who used it for his business, was not a 910 car); In re Davis, No. 06-10461, 2006 WL 3613319 (Bankr. M.D. Ala. Dec. 8, 2006) (car purchased for exclusive use of non-filing spouse was not a 910 car); In re Smith, No. 07-30201, 2007 WL 1577668 (Bankr. S.D. Tex. May 29, 2007) (car purchased exclusively for use of non-filing spouse was not a 910 car); In re Beasley, No. 07-40280, 2007 WL 2986124 (Bankr. M.D. Ga. Oct. 9, 2007) (Laney, J.) (car purchased exclusively for use of debtor's spouse, who was a debtor in a separately filed bankruptcy case, was not a 910 car); In re Pearson, No. 07-00478, 2008 WL 687058 (Bankr. E.D.N.C. Mar. 7, 2008) (car purchased for the use of non-filing spouse was not a 910 car, even when the debtor later became its sole user); In re Ford, No. 07-28188, 2008 WL 1925153 (Bankr. E.D. Wis. Apr. 29, 2008) (car purchased for the exclusive use of non-filing fiancé was not a 910 car); In re Geddes, No. 308-00713, 2008 WL 4490113 (Bankr. M.D.

Tenn. June 17, 2008) (car purchased for the exclusive use of debtor's adult daughter was not a 910 car); In re Matthews, 378 B.R. 481 (Bankr. D.S.C. 2007) (car purchased by debtor and her mother that was used by debtor only for transporting her mother, when debtor had another car for her personal use, was not a 910 car); In re Adaway, 367 B.R. 571 (Bankr. E.D. Texas 2007) (car purchased for non-filing spouse's transportation while debtor and his other vehicle were out of town on business for extended periods of time was not a 910 car); In re Adams, No 06-51651, 2007 WL 675958 (Bankr. M.D. Ga. Mar. 1, 2007) (Hershner, J.) (car purchased for use primarily by non-filing spouse was not a 910 car); In re Press, No. 06-10978, 2006 WL 2734335 (Bankr. S.D. Fla. July 26, 2006) (car purchased primarily for use of co-filing spouse was not a 910 car); compare In re Grimme, 371 B.R. 814 (Bankr. S.D. Ohio 2007) (car purchased for debtor's son, who occasionally took debtor on errands was a 910 car).[7]

On the other hand, when courts find that a car was purchased primarily for the use of the bankruptcy debtor, they conclude it is subject to the hanging paragraph. In re Bolze, No. 06-40036, 2006 WL 4491438 (Bankr. D. Kan. Aug. 31, 2006) (car used by co-filing spouse when transporting the whole family was a 910 car); In re Solis, 356 B.R. 398 (Bankr. S.D. Tex. 2006) (car purchased primarily for the debtor and her non-filing spouse to share as their sole vehicle is a 910 car); In re Phillips, 362 B.R. 284 (Bankr. E.D. Va. 2007) (car purchased for the debtor to use in commuting, driving her kids, and running household errands was a 910 car); In re Lorenz,

---

[7] Grimme is an aberration, because it does not consider the identity of the user to be determinative so long as the vehicle is acquired for a non-business purpose. 371 B.R. at 816-17. It sets forth the test for personal use of the debtor as follows: "When the evidence shows that a vehicle has been acquired for business purposes, the hanging paragraph will not apply. Conversely, if the evidence shows that a vehicle was acquired for non-business purposes, the hanging paragraph will apply." Id. at 816 (citations omitted).

12

368 B.R. 476 (Bankr. E.D. Va. 2007) (car purchased for the debtor for both personal and business use was a 910 car); In re Cross, 376 B.R. 641 (Bankr. S.D. Ohio 2007) (car was a 910 car when there was no credible evidence that it was purchased primarily for the use of the non-debtor wife, and it was actually used interchangeably by both spouses depending on the circumstances); In re Bethoney, 384 B.R. 24 (Bankr. D. Mass. 2008) (car purchased for family use was a 910 car; the opinion provided no facts as to who the primary driver was); In re Vagi, 351 B.R. 881 (Bankr. N.D. Ohio 2006) (car purchased for the personal use of co-filing spouse was a 910 car).

The weight of authority suggests that the debtor's use of the car must be more than incidental but not necessarily exclusive. However, when judicially rewriting a statute to fill a gap left by Congress, as courts seem compelled to do in the case of careless draftsmanship, the Court must consider more than mere weight of authority. In this case, the provision at issue upends one of the foundational policies behind bankruptcy law, as well as long-standing practice: providing equal treatment of similarly situated creditors. The hanging paragraph allows a preferred class of undersecured creditors to be treated as fully secured. Thus, the unsecured portion of their claims are paid in full with interest. Not only does the hanging paragraph provide special treatment to 910 creditors over other unsecured creditors–who only receive a pro rata share of their claim–it also diminishes the pool of money available to pay the other unsecured creditors. The Supreme Court has indicated that, "absent clear[] textual guidance" to the contrary, statutes generally should be interpreted to harmonize with rather than disrupt long-standing practices and policies. BFP v. Resolution Trust Corp., 511 U.S. 531, 543, 114 S. Ct. 1757, 1764 (1994). However, the Court also noted that Congress can override such practices and

13

policies "by implication when the implication is unambiguous." Id. at 546, 114 S. Ct. at 1765.

The Court is mindful that, as discussed earlier, the Eleventh Circuit Court of Appeals has found–based on the legislative history of the hanging paragraph–an unambiguous implication by Congress to prefer 910 creditors over other unsecured creditors. Furthermore, the circuit court has rejected as absurd a reading of the hanging paragraph so narrow that it would exclude claims arising from transactions that included the relatively common practice of financing negative equity. Graupner, 537 F.3d at 1303. Based on this reasoning, the circuit court likely would look unfavorably upon any interpretation of the hanging paragraph that excludes cars purchased for the debtor's use simply because they occasionally are used by a non-bankruptcy filer. Car buyers commonly anticipate the vehicle they purchase sometimes may be used by others, especially family members. If the statute were read to apply only to vehicles purchased for exclusive use by the debtor–a reasonable conclusion from a plain meaning reading of the provision–few cars would fall within the scope of the hanging paragraph. Under Eleventh Circuit reasoning, such a result would be absurd.

While exclusive use by the debtor represents one extreme for interpreting the hanging paragraph, incidental or de minimis use by the debtor lies at the other extreme. And, it is an equally unsuitable interpretation. Congress imposed four express statutory limits on 910 claims, which provides textual evidence that it did not intend to sweep every non-business car within reach of the hanging paragraph. As the weight of authority dictates, it is more reasonable to assume Congress intended it to reach vehicles purchased with the expectation that the debtor would make some regular use of the vehicle–whether that use is defined as "primary use" or "significant and material use" or some other qualifier. Whether the debtor's intended use of the

vehicle is sufficient to bring it within the hanging paragraph must therefore depend on the court's subjective consideration of the totality of the circumstances rather than a clearly defined statutory standard.[8]

### Evaluation of the Suburban and the Kia

The evidence in this case is limited to the unrefuted testimony of Debtor and Mr. Strange. As to the Suburban, Debtor testified she purchased the vehicle to provide for her transportation and for those occasions when she needed to transport the entire family. In other words, the Suburban is used by Debtor, and in some cases the entire family, for nonbusiness purposes. The only evidence about any other person driving the car is Mr. Strange's testimony that he drove it to work a couple of times. Based on these facts, the Court finds Debtor purchased the Suburban intending to be its primary user and that she intended to use it for personal purposes. Therefore, CitiFinancial's claim in this case is protected by the hanging paragraph and cannot be crammed down.

As to the Kia, both Debtor and Mr. Strange testified it was purchased for Mr. Strange to drive to and from work. Mr. Strange used it for that purpose. Debtor also used the car on Mr. Strange's days off and to run errands. In addition, she drove it as her primary vehicle while Mr. Strange was incarcerated. However, there is no evidence that Debtor foresaw Mr. Strange's incarceration at the time of purchase or that she intended her use of the car to be anything more

---

[8] The line here between reasonable interpretation of a statute's plain language and outright judicial redrafting is close at hand. Reading "personal use of the debtor" to mean "primarily of the debtor" or "significantly and materially of the debtor" may be the kind of judicial excess that could be fairly criticized by constitutional purists. In a landscape free of judicial precedent, I would construe the provision narrowly rather than expansively because of the inequality of treatment it creates among creditors.

than incidental. It was not purchased for general family use because it cannot accommodate the entire family. Based on these facts, the Court finds the Kia was purchased for nonbusiness use. In addition, it was purchased primarily for the use of a non-filer. Therefore, Fidelity Bank's claim in this case is not subject to the hanging paragraph and can be crammed down.

## Conclusion

The Court finds both the Kia and the Suburban were acquired for personal, rather than business, use. Furthermore, the Court finds the Suburban was acquired for use primarily by Debtor, while the Kia was acquired for use primarily by her non-filing husband. Based on these findings, the Court concludes CitiFinancial holds a 910 claim, while Fidelity Bank does not. As a result, CitiFinancial's objection to confirmation will be affirmed, and Fidelity Bank's objection will be overruled. Debtor shall amend her Chapter 13 plan in accordance with this Opinion.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT